UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Dede Smith,

    Plaintiff,

  v.

The United Television, Inc. Special
Severance Plan,

    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

File No.  04-1407 JMR/FLN

**PLAINTIFF'S MEMORANDUM OF
LAW REQUESTING CONTINUANCE
IN ORDER TO CONDUCT
DISCOVERY PURSUANT TO
RULE 56(f)**

Bruce J. Douglas (23966)
Chris M. Heffelbower (0311029)
Larkin Hoffman Daly & Lindgren Ltd.
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota  55431-1194
(952) 835-3800

ATTORNEYS FOR PLAINTIFF
DEDE SMITH

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................(i)

INTRODUCTION ............................................................................................................1

PROCEDURAL BACKGROUND....................................................................................3

ARGUMENT ....................................................................................................................4

I.     SMITH IS ENTITLED TO CONDUCT DISCOVERY BEFORE RESPONDING
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR THE
PURPOSE OF ESTABLISHING THE APPROPRIATE STANDARD OF
REVIEW. ...............................................................................................................4

     A.    Rule 56(f) Standard.................................................................................4

     B.    ERISA Standard for Conducting Discovery. ..........................................5

     C.    The Committee Did Not Exercise Reflection or Judgment in the Decision
to Deny Smith Her Claim for Benefits Because the Decision Was Made by
the Committee's Attorneys Prior to the Time the Committee Met to
Discuss Smith's Claim. ............................................................................6

     D.    On Appeal of the Denial of Smith's Claim for Benefits, the Committee
Did Not Exercise Reflection or Judgment Because the Decision Was
Made by the Committee's Attorneys Prior to the Time the Committee Met
to Discuss Smith's Appeal. .....................................................................10

     E.    The Plan Provided to Smith an Incomplete Administrative Record
Because Few of the Committee's Attorneys' Notes or Correspondence
Have Been Included, and Portions of the Record Are Redacted. ...........13

     F.    The Committee Failed to Address Inconsistent and Illogical Projections of
Smith's Compensation. ...........................................................................15

     G.    The Committee Is Operating Under a Conflict of Interest Because the
Committee Members Are Employed by Fox, the Successor to the Entity
Who Set Up the Plan (United Television, Inc.) and Who Designed the
Plan to Benefit Only Those Employees Who Worked for United
Television, Not Fox. ................................................................................19

CONCLUSION.................................................................................................................22

# TABLE OF AUTHORITIES

**CASES**

*Abram v. Cargill, Inc.,*
  2003 WL 1956218 (D. Minn.)..................................................................................6

*Barnhart v. UNUM Life Insurance Company,*
  179 F.3d 583 (8th Cir. 1999)..................................................................................6

*Brown v. Seitz Foods, Inc. Disability Benefit Plan,*
  140 F.3d 1198 (8th Cir. 1998)................................................................................6

*Cash v. Wal-Mart Group Health Plan,*
  107 F.3d 637 (8th Cir. 1997)..................................................................................9

*Chalmers v. Quaker Oats Co.,*
  61 F. 3d 1340 (7th Cir. 1995)...............................................................................20

*Coffman v. Metropolitan Life Ins. Co.,*
  204 F.R.D. 296 (S.D. W.Va. 2001).......................................................................13

*Farley v. Arkansas Blue Cross & Blue Shield,*
  147 F.3d 774 (8th Cir. 1998)..................................................................................5

*Geissal v. Moore Medical Corp.,*
  192 F.R.D. 620 (E.D. Mo. 2000).............................................................13, 14, 15

*Larson v. Minnesota Chamber Business Services, Inc. Employee Welfare Plan,*
  114 F. Supp. 2d 867 (D. Minn. 2000).....................................................................5

*Long Island Lighting Co.,*
  129 F.3d 268 (2d. Cir. 1997)................................................................................14

*Morgan v. Contractors, Laborers, Teamsters & Engineers Pension Plan,*
  287 F.3d 716 (8th Cir. 2002).................................................................................7

*Rubio v. Chock Full O'Nuts Corporation,*
  254 F. Supp. 2d 413 (S.D.N.Y. 2003)...................................................................10

*Stanback v. Best Diversified Products, Inc.,*
  180 F.3d 903 (8th Cir. 1999)..................................................................................4

*U.S. ex rel. Bernard v. Casino Magic Corp.,*
  293 F.3d 419 (8th Cir. 2002)..................................................................................4

*United States v. Mett,*
  178 F.3d 1058 (9th Cir. 1999)..............................................................................13

*Woo v. Deluxe Corp.,*
  144 F. 3d 1157 (8th Cir. 1998)...............................................................................5

**STATUTES**

ERISA § 502(a)(1)(B)...................................................................................................3

ERISA § 503(2).........................................................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(f)....................................................................................................4

Fed. R. Civ. P. 803(17)..............................................................................................19

Fed. R. Civ. P. 803(8)................................................................................................19

**REGULATIONS**

29 C.F.R. § 2560.503-1(b)(5)....................................................................................21

29 C.F.R. § 2560.503-1(h)..........................................................................................11

29 C.F.R. § 2560.503-1(h)(2)(iv)..............................................................................12

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Dede Smith,                                    File No.  04-1407 JMR/FLN

                    Plaintiff,

        v.                                     **PLAINTIFF'S MEMORANDUM OF
                                               LAW REQUESTING CONTINUANCE
The United Television, Inc. Special            IN ORDER TO CONDUCT
Severance Plan,                                DISCOVERY PURSUANT TO
                                               RULE 56(f)**
                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


## INTRODUCTION

Plaintiff Dede Smith ("Smith") is unable to present facts essential to respond to

Defendant's The United Television, Inc. Special Severance Plan (the "Plan's") Motion for

Summary Judgment, and requests that she be permitted to conduct discovery pursuant to Federal

Rule of Civil Procedure 56(f).  The Plan argues that the Administrative Record (the "Record") of

its denial of severance benefits to Smith is complete and that this Court can make a decision

based upon the Record alone.  Eighth Circuit precedent, however, permits a plan participant or

beneficiary to conduct discovery in an ERISA denial of benefits case to establish a heightened

standard of review where there is (1) a palpable conflict of interest, or a serious procedural

irregularity, which (2) caused a serious breach of the plan administrator's fiduciary duty to her.

Smith is entitled to conduct discovery to establish that a less deferential standard of

review should be applied by this Court.  First, the Committee's process to deny Smith her

benefits was not based upon reflection or judgment because the Committee made the decision to

deny Smith her claim for benefits *prior to* the time the Committee met to discuss Smith's claim

and had an opportunity to review the evidence.  Second, the Committee has provided to Smith an incomplete Record, where notes and correspondence of the Committee's attorneys appear to be missing and parts of the Record are redacted.  Third, the decision of the Committee was based upon inconsistent and illogical calculations and assumptions concerning Smith's compensation, which the Committee, apparently, never addressed.  Finally, the Committee is operating under a palpable conflict of interest because the Committee members are employed by Fox, the successor to United Television, Inc., which established the Plan and designed it to provide an incentive to its employees and to protect those employees who stayed through the acquisition and eventually became employed by the acquiring entity.

Smith submits that the limited information now available to her in the partial Record provided to her establishes the threshold requirement of procedural irregularities and a palpable conflict of interest to justify discovery for the purpose of determining the applicable standard of review.  Smith is permitted to conduct discovery to further flesh-out the illusory "process" the Committee conducted when the decision was made to deny Smith her claim for benefits.  Smith requests that this Court order a continuance pursuant to Rule 56(f) to permit her to conduct discovery before responding to the Plan's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

On March 29, 2004, Smith filed her Complaint against the United Television, Inc. Special Severance Plan, alleging that the Plan wrongfully denied her claim for benefits under the Plan pursuant to ERISA § 502(a)(1)(B), and that she was entitled to attorneys' fees under the terms of the Plan.  (Docket 1).  On June 25, 2004, the Plan answered Smith's Complaint and denied all allegations.  (Docket 6).  On August 10, 2004, the Plan filed its Motion for Summary Judgment, arguing that (1) the Committee's denial of Smith's benefits must be reviewed under an abuse of discretion standard, and (2) the Committee's decision to deny Smith's claim for benefits was reasonable.  (Docket 11).

On August 17, 2004, Smith's attorneys served Interrogatories and Requests for Production of documents on the Plan.  Declaration of Chris M. Heffelbower, dated September 9, 2004 ("Heffelbower Decl."), Exhs. A & B.  On August 25, 2004, Smith's attorneys served a subpoena for production of documents to FOX/UTV Holdings, Inc.  Heffelbower Decl., Exh. C. On August 27, 2004, Smith's attorneys served a subpoena for production of documents to Fox Entertainment Group, Inc.  Heffelbower Decl., Exh. D.  The parties have agreed that the Plan, FOX/UTV Holdings, Inc. and Fox Entertainment Group, Inc. may defer their responses to those discovery requests pending a decision on the Plaintiff's request for discovery under Rule 56(f). Heffelbower Decl., Exh. F.

For the reasons which follow, Smith requests that the Court grant a continuance to permit her to conduct discovery in order to establish the appropriate standard of review pursuant to Federal Rule of Civil Procedure 56(f).[1]

---

[1]  If the Court denies Smith's request for a continuance to conduct discovery, Smith requests an additional 20 days to provide a Response to the Plan's arguments raised in its Memorandum of Law in support of its Motion for Summary Judgment.

## ARGUMENT

**I.**   **SMITH IS ENTITLED TO CONDUCT DISCOVERY BEFORE RESPONDING TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR THE PURPOSE OF ESTABLISHING THE APPROPRIATE STANDARD OF REVIEW.**

**A.**   **Rule 56(f) Standard.**

"A party opposing summary judgment who believes that he has not had adequate opportunity to conduct discovery must seek relief pursuant to Federal Rule of Civil Procedure 56(f), which requires that party to show 'what specific facts further discovery might unveil.'" *U.S. ex rel. Bernard v. Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002) (citing *Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903, 911 (8th Cir. 1999)). "The court may then refuse to grant summary judgment, order a continuance to permit further discovery, or 'such other order as is just.'" *Id.* at 426. Specifically, Rule 56(f) provides:

> **(f)  When affidavits are unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). "The purpose of subdivision (f) is to provide an additional safeguard against any improvident or premature grant of summary judgment . . . and [the Rule] should be applied with the spirit of liberality." *Casino Magic Corp.*, 293 F.3d at 426 (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*:  Civil 3d § 2740 (1998)).

In this case, a ruling on the Defendant's Motion for Summary Judgment would be premature.  The Defendant has not responded to any discovery in this lawsuit.  Smith's counsel served Interrogatories and Request for Production of Documents to the Plan, and Smith's

counsel served subpoenas for documents to FOX/UTV Holdings, Inc., and Fox Entertainment Group, Inc.  Heffelbower Decl., Exhs. A-D.  However, Defendant requested that it not be required to respond to those requests until the Court had the opportunity to rule on the Plaintiff's Rule 56(f) request.  Heffelbower Decl., Exh. F.  Smith is entitled to receive responses to those discovery requests and conduct additional discovery, if necessary, before responding to the merits of the Plan's Motion for Summary Judgment.  In this case, the decision concerning which standard of review should apply could be determinative.  The discovery sought by Smith is intended to obtain evidence to show the Court that a palpable conflict of interest exists and that there are serious procedural irregularities that require the application of a less deferential standard of review than the arbitrary and capricious standard.

**B.     ERISA Standard for Conducting Discovery.**

"A plaintiff may be permitted to do additional discovery to establish that a conflict of interest or procedural irregularity existed, for purposes of triggering a heightened standard of review."  *Larson v. Minnesota Chamber Business Services, Inc. Employee Welfare Plan,* 114 F. Supp. 2d 867, 871 (D. Minn. 2000) (citing *Farley v. Arkansas Blue Cross & Blue Shield,* 147 F.3d 774, 776 n. 4 (8th Cir. 1998)).  In the leading case of *Woo v. Deluxe Corp.*, 144 F. 3d 1157 (8th Cir. 1998), the Court of Appeals held that a court, in reviewing an ERISA plan administrator's denial of benefits, should apply a less deferential standard of review when a claimant has presented "material, probative evidence demonstrating that (1) a palpable conflict of interest or serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her."  *Id.* at 1160.  Subsequently, in *Farley v. Arkansas Blue Cross & Blue Shield, supra*, the Court of Appeals noted the following:

> A palpable conflict of interest or serious procedural irregularity
> will ordinarily be apparent on the face of the administrative record

or will be stipulated to by the parties.  Thus, the district court will only rarely need to permit discovery and supplementation of the record to establish these facts.  <u>We note, however, that conducting limited discovery for the purpose of determining the appropriate standard of review does not run a foul of the general prohibition on admitting evidence outside the administrative record for the purpose of determining benefits.</u>  (Emphasis added.)

147 F. 3d at 776 n. 4 (citing *Brown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198,

1200 (8th Cir. 1998)).[2]

Thus, contrary to Defendant's assertion, there is no impediment in Circuit precedent to

permitting the type of discovery sought by the Plaintiff in this case.  Accordingly, Smith should

be permitted to conduct discovery before responding to the Plans' Motion for Summary

Judgment.[3]

    **C.**    **<u>The Committee Did Not Exercise Reflection or Judgment in the Decision to Deny Smith Her Claim for Benefits Because the Decision Was Made by the Committee's Attorneys Prior to the Time the Committee Met to Discuss Smith's Claim.</u>**

The Committee's process to deny Smith her claim for benefits was illusory because the

Committee was not the entity that made the decision to deny Smith's claim.  The Committee's

<u>lawyers</u> made the decision to deny Smith her benefits.  The Committee's lawyers distributed to

---

[2]   The Plan cites to *Abram v. Cargill, Inc.*, 2003 WL 1956218 (D. Minn.) in its Brief in support of its Motion for Summary Judgment, in support of its position that Smith should not be permitted to conduct discovery.  *Abram*, however, does not apply here.  In *Abram*, the plan beneficiary was seeking to expand the administrative record in order to bolster the merits of her claim.  That is not the case here.  Smith is not attempting to expand the Administrative Record by taking discovery.  Smith is requesting discovery for the sole purpose of establishing the applicable standard of review, which was not at issue in the *Abram* case.

[3]   In the Severance Plan's Brief, at page 11, the Plan mistakenly indicates that the Court of Appeals in *Barnhart v. UNUM Life Insurance Company*, 179 F.3d 583 (8th Cir. 1999), made the following statement, "Material probative evidence of bias must be introduced prior to expansion of the record."  The statement does not appear in the opinion and should be disregarded.  In fact, *Barnhart* concerned the analysis of which standard of review applied generally, but did not discuss whether discovery was permitted to determine the standard of review.

the Committee a draft of a letter denying Smith's claim for benefits *prior to* the time the Committee met to review the merits of Smith's claim and *prior to* the time the Committee had access to the documents she submitted on her behalf.  The Committee had a duty to reach a decision using "reflection and judgment," but that did not happen here.  *Morgan v. Contractors, Laborers, Teamsters & Engineers Pension Plan*, 287 F.3d 716, 723 (8th Cir. 2002) (holding that the Trustees did not reach a decision based upon "reflection and judgment" in part because the Trustees were predisposed to deny Morgan's claim for benefits before the appeal hearing started).

The Plan Administrator of the United Television, Inc. Special Severance Plan is a Committee comprised of three individuals, all of whom are employees of Fox: Lynn Franzoi, Jean Fuentes, and Betsy Swanson.  Defendant's Motion for Summary Judgment, n. 3. Ms. Franzoi and Ms. Swanson work in Beverly Hills and Ms. Fuentes works in New York.  *Id*. On July 31, 2003, the Committee met to discuss Smith's claim for benefits.  All three members of the Committee were present at the meeting.  Significantly, **three** attorneys were present at the meeting:  Fox's in-house legal counsel, J. Jordan Lippner, and outside legal counsel, Samuel Krause and Scott Landau.  Heffelbower Decl., Exh. E-5.  The Committee's minutes do not indicate where the conference was held, but presumably it was held by teleconference because of the location of the Committee were members.  Significantly, the minutes do not disclose the duration of the meeting.

More significant than the fact that three attorneys -- one for each Committee member -- were present at the meeting to discuss Smith's claim for benefits, is the correspondence that Mr. Landau, one of the attorneys of the Committee, had with the Committee members **six days prior** to the Committee's meeting.  On July 25, 2003, Mr. Landau emailed to the Committee

members a draft of their response **denying** Smith's claim for benefits.  Heffelbower Decl.,

Exh. E-4.  Mr. Landau even had to point out to the Committee members basic information about

Smith, such as that Smith was a former employee of KMSP-TV in Minneapolis, because the

Committee members did not have this information.  The email from Mr. Landau to the

Committee members and others, dated July 25, 2003, states:

> The attached files contain for your review and comment (i) a draft
> of the Committee's response to Ms. Smith's claim for severance
> benefits (1st attached file), and (ii) **[redacted]** Ms. Smith are
> former employees of KMSP-TV in Minneapolis).  In light of the
> fact that the Committee must respond to Ms. Smith's claim
> **[redacted]** by August 1st, we would like to set up a Committee
> meeting for Monday.  Please confirm your availability.  We are
> sending by facsimile (i) the correspondence regarding these claims
> (including the correspondence from the attorneys for the
> claimants), and (ii) the drafts of the Committee's responses
> together with the exhibits referred to in the response.
>
> If you have any questions about the foregoing, please contact us.
>
> Best regards,
>
> Scott E. Landau, Esq.

Heffelbower Decl., Exh. E-4.  At the same time that Mr. Landau provided to the Committee a

copy of "their" decision to deny Smith her benefits, he provided the Committee with Smith's

submissions.  Apparently, the Committee did have copies of those documents previously and did

not consider them prior to receipt of a draft of the denial of benefits letter prepared by counsel.

The draft letter that Mr. Landau provided to the Committee was adopted wholesale by the

Committee on July 31, 2003 and sent to Smith's counsel the next day.  Affidavit of Lynn Franzoi

(Franzoi Aff.), Exh. 2.

It is apparent that the Committee did not exercise reflection or judgment in the decision

to deny Smith's claim for benefits.  The Committee, apparently, only received a copy of Smith's

submissions six days prior to the initial meeting, *along with* a draft letter from the Committee's attorney, denying Smith's claim.  ERISA does not permit a Plan Administrator to fail to exercise judgment and give their duties entirely over to the Plan Administrator's attorneys.[4]  It is the Committee's duty to review the facts objectively before arriving at a decision in order to afford a claimant a full and fair review.

The discretion to be exercised by an ERISA plan administrator is not completely unbounded:  it must be exercised in a manner that is consistent with the terms of the Plan document.  In this case, Section 3.1 of the Plan states that it:

> [s]hall be interpreted, administered and operated by the Plan Administrator, which shall have complete authority, in its sole discretion *subject to the express provisions of the Plan,* to determine who shall be eligible for Severance Benefits, to interpret the Plan, to prescribe, amend and rescind rules and regulations relating to it, and to make all other determinations necessary or advisable for the administration of the Plan.  (emphasis added)

Franzoi Aff., Exh. 1.  When it inserted the phrase "subject to the express provisions of the Plan," surely the Plan sponsor did not intend that the Plan Administrator would ignore the purpose or express language of the Plan document in making its benefit claims determinations.  Yet, that is precisely what the currently available information contained in the incomplete Administrative Record reveals:  the Committee abdicated its responsibilities to a group of attorneys, who turned the claims process into a winner-take-all adversarial process in which they were free to develop hypothetical situations, arguably plausible theories, and to pursue strained and tortured interpretations of the Plan language upon which a denial of Smith's claim for benefits could be supported, however tenuously.

---

[4]   The Plan in its Brief cites to *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997) for the proposition that courts should avoid becoming "substitute" plan administrators. ERISA, likewise, does not permit attorneys for plan administrators to usurp a fiduciary's role.

The Committee members were under a fiduciary duty to Smith to review all of the evidence and make a reasoned decision, even if that meant that Smith would be paid her benefits. To the contrary, the decision, effectively, was made for the Committee by its attorneys before it met to review the evidence.  This is the type of "procedurally irregularity" that requires a far less than deferential standard of review and discovery to fully develop the irregularities.  *See Rubio v. Chock Full O'Nuts Corporation*, 254 F. Supp. 2d 413 (S.D.N.Y. 2003) (holding that where the Severance Plan did not authorize delegation of authority, and the Plan Administrator delegated authority to a sub-committee, *de novo* standard of review applied).

At a minimum, Smith requests that she be permitted to conduct the following discovery in order to fully develop the procedural irregularities present here:  (1) information regarding the decision-making process to deny her claim for benefits; (2) information regarding the scope and nature of the Committee's "meeting" to deny her claim; and (3) information regarding the roles of the attorneys in the decision to deny Smith's claim for benefits.  Smith has requested this information in its Interrogatories and Request for Production of Documents.  Heffelbower Decl., Exhs. A & B.

> **D.** **On Appeal of the Denial of Smith's Claim for Benefits, the Committee Did Not Exercise Reflection or Judgment Because the Decision Was Made by the Committee's Attorneys Prior to the Time the Committee Met to Discuss Smith's Appeal.**

Plaintiff appealed her decision to deny her claim for benefits.  The Committee met on October 14, 2003 at approximately 5:30 p.m. (EST) regarding Smith's claim for benefits.  The location of the meeting is not specified in the minutes, but was most likely conducted by teleconference considering the distant location of the parties.  The minutes are nearly identical to the minutes of the Committee's previous meeting regarding Plaintiff's claim for benefits under

the Plan.  Heffelbower Decl., Exh. E-8.  One of the Committee's attorneys, Mr. Landau, was

present at this meeting.  *Id.*

Once again, on October 7, 2003 seven days **prior to** the Committee's meeting, Mr.

Landau emailed a draft of the determination on appeal letter to the Committee, which affirmed

the Committee's denial of Smith's claim for benefits.  Mr. Landau indicated in the email that

Smith's documents and submissions would be sent by facsimile, because, again, the Committee

apparently did not have access to those documents prior to receiving Mr. Landau's draft letter

affirming the denial of Smith's claim for benefits.  The October 7, 2003 email from Mr. Landau

to the Committee members and others states:

> The attached file contains a draft of the Committee's response to
> DeDe Smith's appeal under the United Television, Inc. Special
> Severance Plan.  We are sending by facsimile (i) the
> correspondence regarding the appeal (the correspondence from the
> attorney for Ms. Smith), and (ii) the exhibits referred to in the draft
> of the Committee's response.
>
> Best regards,
>
> Scott E. Landau, Esq.

Heffelbower Decl., Exh.  E-8.  The email contains an attached letter denying Smith's appeal for

benefits, which is later adopted wholesale by the Committee during its meeting on October 14,

2003.  Franzoi Aff., Exh. 12.  On the face of the Administrative Record, it is clear that a draft of

the Committee's denial of Smith's claim on appeal was circulated prior to the Committee

meeting.

ERISA regulations promulgated by the Department of Labor require that a <u>plan</u>

<u>administrator</u> conduct a "full and fair review," which includes the review all documents

submitted by the claimant.  29 C.F.R. § 2560.503-1(h).  Specifically, the regulations require that

the plan, "Provide for a review that takes into account all comments, documents, records, and

other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iv). The Plan's over-reliance on attorneys bespeaks a one-sided and perfunctory review by the Plan's fiduciaries. This is not the "full and fair review" contemplated by the statute and regulations.

In this case, the Committee's attorneys, not the Committee, were the driving force behind the Committee's decision. The Committee members treated this as an adversarial process whereby they apparently believed they had no obligation to be fair or objective to Smith. In fact, the Plan itself requires the Plan Administrator to be fair and equitable, "All questions of any character regarding whatsoever arising in connection with the interpretation of the Plan or its administration or operation shall be submitted to and settled and determined by the Plan Administrator in an equitable and fair manner in accordance with the procedure for claims and appeals described in Section 2.3 hereof." Franzoi Aff., Exh. 1, § 3.2. This provision is consistent with the statute's requirement that a Plan's fiduciaries make benefit determinations consistent with the fiduciary responsibilities to plan participants. *See* ERISA § 503(2) ("every employee benefit plan shall * * * afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.")

Smith requests that she be permitted to conduct discovery regarding (1) the decision-making process on appeal to affirm the denial of her claim for benefits; (2) the scope and nature of the Committee's October 14, 2003 "meeting" to deny her claim; and (3) the roles of the attorneys in the decision to deny Smith's claim for benefits on appeal. Smith has requested this information in its Interrogatories and Request for Production of Documents. Heffelbower Decl.,

Exhs. A & B.  Smith also requests that she be permitted to depose the Committee members and the attorneys involved in the decision-making process.

   **E.     The Plan Provided to Smith an Incomplete Administrative Record Because Few of the Committee's Attorneys' Notes or Correspondence Have Been Included, and Portions of the Record Are Redacted.**

   The Committee's attorneys, not the Committee, conducted the perfunctory review of Smith's claims, and drafted the denial letters to Smith.  However, the Administrative Record is incomplete and does not include all of the paperwork and correspondence generated by the Committee's attorneys in their investigation and decision to deny Smith her claim for benefits. Smith is entitled to conduct discovery to obtain the complete Administrative Record.  The Plan Administrator may not assert the attorney-client privilege as a basis to avoid disclosure of this information.  "It is well established that an ERISA trustee or plan administrator, who administrators the plan for the benefit of all of the beneficiaries, must 'disclose to plan beneficiaries all information regarding plan administration.'"  *Geissal v. Moore Medical Corp.*, 192 F.R.D. 620, 624 (E.D. Mo. 2000) (quoting *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999)).  "From another angle, the beneficiaries, not the plan trustee, are the clients of the attorney who provided legal advice for the administration of the plan."  *Id*. (citations omitted).

   Smith is entitled to all documents generated by the Committee's attorneys and legal advice imparted to the Committee because the Plan is not permitted to invoke the attorney-client privilege because of the "fiduciary exception" to the attorney-client privilege.  The fiduciary exception to the attorney-client privilege provides that "an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration."  *Coffman v. Metropolitan Life Ins. Co.*, 204 F.R.D. 296, 298 (S.D. W.Va. 2001) (quoting *In re Long Island Lighting Co.*, 129 F.3d 268, 272

**Plaintiff's Memorandum of Law Requesting Continuance in Order to**                    **Page 13**
**Conduct Discovery Pursuant to Rule 56(f)**
**Case No. 04-01407-JMR/FLN**

(2d. Cir. 1997)). The Court in *Geissal* succinctly stated the rational for allowing plan

beneficiaries access to information regarding pre-decisional legal advice imparted to the

Committee and pre-decisional documents generated by the Committee's attorneys:

> For the defendants to prevail on this argument, whenever the
> administration of a plan involves the denial of a beneficiary's
> claim or benefits under a plan, all of the antecedent, pre-decisional
> legal advice of counsel would be subject to the attorney-client
> privilege and not available for review by the beneficiaries of the
> plan, including the disappointed beneficiary.  This contradicts the
> principal that the plan administrator or trustee administers the plan
> in the beneficiaries' best interests.  The prospect of post-decisional
> litigation against the plan by a disappointed beneficiary can exist
> whenever the plan denies a claim.  Because the denial of claims is
> as much a part of the administration of a plan as the decision-
> making which results in no unhappy beneficiary, the prospect of
> post-decisional litigation against the plan is an insufficient basis
> for gainsaying the fiduciary exception to the attorney-client
> privilege.

*Geissal*, 192 F.R.D. at 625.

As previously discussed in Sections C and D of this Memorandum of Law, it is

undeniable that the Committee's three attorneys were heavily involved in the pre-decisional

process to both deny Smith her initial claim for benefits and deny Smith's claim on appeal.  *See*

Heffelbower Decl., Exhs. E-4 & E-8.  In fact, it was the attorneys, and not the Committee, who

conducted the investigation of Smith's claim.  *See, e.g.,* Heffelbower Decl., Exh. E-1 (email from

Carol Rueppel to Scott Landau regarding Smith's performance); Exh. E-3 (memo from Carol

Rueppel to Scott Landau regarding Smith's compensation).  But, it appears from the

Administrative Record provided to Smith that she has not been give all pre-decisional

documentation of the Committee's attorneys.  *See, e.g.* Heffelbower Decl., Exh. E-1 (attached

file to an email from Mr. Landau is not included in Administrative Record regarding "DeDe

Smith's claim for benefits").

Smith is entitled to conduct discovery in order to receive a complete copy of the

Administrative Record, which includes all documents generated by legal counsel in the

investigation of Smith's claim, and the pre-decisional documents and legal advice associated

with the Committee's decisions to deny Smith her claim for benefits.[5]  In this regard, information

pertaining to other claimants is directly relevant to Smith's claim.  Whether the Committee has

applied the Plan's terms consistently is an issue that bears on the applicable standard of review.

Heffelbower Decl., Exhs. A & B.  Smith also requests that she be permitted to depose Mr.

Landau, Mr. Lippner, and Mr. Krause, regarding their pre-decisional involvement in the

Committee's determinations to deny Smith her claim for benefits.  *See Geissal*, 192 F.R.D. at

625 (holding that plan beneficiary would be permitted to depose attorneys who represented plan

administrator in its decision to deny him benefits regarding pre-decisional legal opinions and

advice.).

**F.** **The Committee Failed to Address Inconsistent and Illogical Projections of Smith's Compensation**.

Another serious procedural irregularity exists in this Record which caused a serious

breach of the Plan Administrator's fiduciary duty to Smith because the Plan Administrator's own

documentation shows inconsistent and illogical projections of Smith's compensation.  The Plan

alleges that Smith did not experience a "reduction in the Employee's salary or bonus

opportunity" to trigger benefits under the Plan because Smith always had the "opportunity" to

earn more than the previous year, even though, in reality, she did not earn more.  The Plan makes

---

[5]   In addition, Smith has not been provided with a complete Administrative Record because several of the exhibits have been redacted, with no explanation given for such redaction, including the minutes of the July 31, 2003 meeting of the Committee.  Heffelbower Decl., Exhs. E-1, E-4, E-5, E-6, and others.  Smith requests that she be permitted to conduct discovery in order to obtain the portions of the Administrative Record that have been redacted.

this argument even though Smith W-2's show that she did experience a decrease in compensation in 2002, which would have continued in 2003.  Heffelbower Decl., Exh. E-2.

In the year 2000 while working for KMSP-TV, prior to the acquisition by Fox, Smith made approximately $149,375.92.  In the year 2001, Smith's compensation was approximately $173,972.71.  Heffelbower Decl., Exh. E-2.  In the year 2001, Smith was an employee of KMSP-TV until August 1, 2001, when Fox Entertainment Group acquired the station.  Therefore, for two-thirds of the year 2001, Smith was employed by KMSP-TV.  In January 2002, however, that Fox changed the compensation structure of the account executives.  Under the new compensation program, Smith earned only approximately $149,682.17 in the year 2002.  This was over $24,000 less than what Smith had made the previous year where she spent two-thirds of the year working for KMSP-TV prior to the acquisition of the company by Fox in August 2001.  This case is simple:  in 2002 (after the acquisition and a change in the compensation structure) Smith experienced a reduction in compensation in the amount of approximately $24,000.  Smith is, therefore, entitled to benefits based upon this fact alone.

The Committee, however, creatively contends that this is not a reduction in Smith's salary or bonus opportunities, because Smith could have earned more if she wanted to.  In a memo from Carol Rueppel of Fox to Scott Landau, one of the attorneys for the Committee, dated **June 27, 2003**, Ms. Rueppel inexplicably comes to the conclusion that Smith had the potential to earn $163,511.26 in the year 2002, even though she only actually earned $149,682.17. Heffelbower Decl., Exh. E-3  That does not make sense.  Smith did not earn that amount in 2002, and the Committee cannot deny Smith her benefits because she "potentially" could have earned more.  If that were the standard, no participant could ever receive benefits under the Plan

because, theoretically, they potentially could always earn more compensation than they actually did.

In addition, the Committee repeatedly stated in their denial letters to Smith that she had the "potential" to earn at a minimum $175,956 during the year 2003, but she left the company before the end of the year and never realized that amount.  What is interesting about this analysis is that prior to Smith leaving Fox, she was only receiving a bi-weekly salary of $3,173.  The salary was, according to Fox, "a 50% draw of Ms. Smith's anticipated salary and commissions [which] amounted to a check in the amount of at least $3,173 every two weeks."  Franzoi Aff., Exh. 12.  Thus, based on the information in the Record, Fox's calculation of her compensation while she was employed at KMSP, projected annual compensation of $164,996.00 in the year 2003.  That is significantly less than the amount the Committee assumed Smith would receive in compensation during 2003—at a minimum $175,956.  Rather than relying on the actual data in the Record, however, the Committee relied upon a different, hypothetical number to project her earnings for 2003, which it claims would have exceeded her earnings in 2002.  At the same time, the Committee looked for ways to deduct amounts from Smith's 2001 actual earnings in an apparent effort to show that her 2003 earnings were greater even without relying upon hypothetical projections.  Heffelbower Decl., Exh. E-3.

Furthermore, the Plan's position before this Court conflicts with its position in the administrative review.  When it denied Smith's claim, the Committee made much of the new Fox compensation plan, which it claimed would have resulted in a greater commission opportunity.  According to the Committee's denial letter, Smith would have received 12% of all new business.  Heffelbower Decl., Exh. E-12.  In its brief, however, the Plan now states that the 12%

commission rate applied to new business "during the first six months."  Defendant's Brief at

p. 13.

The Committee appears to have manufactured Smith's projected earnings for 2003 in

order to justify the denial of her claim.  This inconsistency is further indicative of a breach of

fiduciary duty in the Committee's calculations of Smith's past and projected compensation

justifies Smith's request for discovery regarding her compensation and all calculations relating to

past and projected earnings.  Heffelbower Decl., Exhs. A & B.

**Plaintiff's Memorandum of Law Requesting Continuance in Order to**                       **Page 18**
**Conduct Discovery Pursuant to Rule 56(f)**
**Case No. 04-01407-JMR/FLN**

**G.      The Committee Is Operating Under a Conflict of Interest Because the Committee Members Are Employed by Fox, the Successor to the Entity Who Set Up the Plan (United Television, Inc.) and Who Designed the Plan to Benefit Only Those Employees Who Worked for United Television, Not Fox.**

The Committee members are operating under a palpable conflict of interest because the Committee members are reviewing claims under a Plan that was specifically designed to benefit only employees who were formerly employed by United Television, Inc.   All three Committee members, however, are employed by Fox.[6]  Defendant's Motion for Summary Judgment, n. 3. The Plan was designed to benefit the employees of the company, United Television, Inc. (UTV), which Fox acquired in a merger in August 2001.  The Committee members may not be particularly willing to grant benefits under a Plan that favors former United Television employees only.

It is significant to consider the context in which the severance plan was established by UTV in 1999 when the company contemplated the possibility of its eventual sale or merger. Naturally, it would be to the mutual benefit of the seller and buyer in this situation to preserve intact the work force of the selling entity until the time of closing in order to assure that it remained a going concern.[7]  Likewise, the acquirer in many cases, this apparently being one of them, would prefer to have the opportunity to hire some or all of the acquired entity's employees.  The difficulty, of course, is that an acquisition of this nature tends to engender a great deal of uncertainty and consternation among employees, who begin to look elsewhere for

---

[6]   Plaintiff is unaware at this time whether any of the Committee members is a former UTV employee.

[7]   Copies of a press release, is attached to the Declaration of Chris Heffelbower as Exh. G.  The court may consider these materials pursuant to Fed. R. Civ. P. 803(8), (17).

their future employment security when it becomes known that their employer may be sold.

Thus, a severance plan, such as the one established by UTV, serves two purposes:  (1) it provides

a financial incentive to the seller's employees to remain on the payroll through the date of the

acquisition and (2) affords the same employees a financial cushion in the event that their

continued employment with the acquirer proves to be less than satisfactory.

Unlike other severance plans, such as the plan in *Chalmers v. Quaker Oats Co.*, 61 F. 3d

1340 (7th Cir. 1995), a case that the Defendant claims is "on all fours" with the facts of this case,

the UTV severance plan expressly gives the former UTV employees the right to quit and to

receive severance benefits merely because their compensation decreases under new ownership.[8]

Thus, a predecessor employer establishes a severance plan to preserve its work force intact,

deliver it along with an operating business to an acquirer, and provide those same employees

with protection against the very types of actions admittedly taken by Smith's employer in this

case.[9]

The UTV Severance Plan was designed to protect the former UTV employees.  The

Plan's purpose is stated in the second paragraph of the Plan document:

> The Plan, as set forth herein, is intended to help retain qualified
> employees, maintain a stable work environment and provide
> economic security to certain employees of the Company in the
> event of a Qualifying Termination following a Change in Control
> (as defined herein).

Franzoi Aff, Exh. 1.  The Plan allowed certain employees, including Smith, an opportunity for a

two-year "free look" at how the structure of her job and compensation would change once the

---

[8]   In *Chalmers*, the employee was discharged for allegedly violating the employer's policy against
sexual harassment.  It does not appear from the reported decision whether any employee of
Quaker Oats would have entitled to severance benefits if he or she had quit voluntarily.

[9]   Smith contends, and does not waive her position, that she was constructively discharged.

acquisition occurred.  Under the terms of the Plan, if Smith stayed with the acquiring entity after the acquisition, and experienced a reduction in "salary or bonus opportunity," then Smith was entitled to her Severance Benefits under the Plan.  This Plan, however, benefited United Television employee's only, and not the Fox employees, who likely also experienced some changes due to the acquisition.  Employees of Fox may not be sympathetic to the plight of former United Television employees who experienced a reduction in salary or bonus opportunity, because the Fox employees may have experienced a similar reduction due to the acquisition, without the benefit of a Severance Plan.

Smith requests that she be permitted to conduct discovery regarding other plan beneficiaries' claims under the Plan and all decisions by the Committee under the Plan, in order to determine if the Committee has ever given benefits to a plan beneficiary and to determine if the terms in the Plan have been consistently applied.  ERISA regulations specifically require that the plan provisions be consistently applied.  ERISA requires that "[t]he claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants."  29 C.F.R. § 2560.503-1(b)(5).  Smith also requests that she be permitted to conduct discovery regarding the procedure for the selection of the Committee members.  Heffelbower, Decl., Exhs. A & B.  Smith also requests that she be permitted to conduct discovery on the issue of whether the Committee members have a substantial financial stake in the outcome of their decisions.  The Plan has not provided Smith with any evidence as to the Plan Sponsor, Funding Source of the Plan, and whether the Plan is funded.  Heffelbower Decl., Exhs. A-D.  This evidence may also establish a conflict of interest of the Committee members.

## CONCLUSION

Plaintiff Dede Smith requests that this Court Order a continuance in order for Smith to conduct discovery, in accordance with the discovery requests attached to the Declaration of Chris M. Heffelbower, and to permit her to depose the Committee members and their three attorneys, for the purpose of establishing the appropriate standard of review here.  The positions of the Record available to Smith at this time and the procedure by which her claim was decided evidence sufficient procedural irregularities and conflict of interest causing a breach of fiduciary duties to satisfy the threshold requirement for discovery of information bearing on the applicable standard of review.


Dated:  September 9, 2004   s/Chris M. Heffelbower
             Bruce J. Douglas (23966)
             Chris M. Heffelbower (0311029)
             Larkin Hoffman Daly & Lindgren Ltd.
             1500 Wells Fargo Plaza
             7900 Xerxes Avenue South
             Minneapolis, Minnesota  55431-1194
             (952) 835-3800

             ATTORNEYS FOR PLAINTIFF DEDE SMITH


962764.1